CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 3 1 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES D. WEDDLE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06cv00686 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| JO ANNE B. BARNHART, | ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Charles D. Weddle ("Weddle") brought this action pursuant to 42 U.S.C. § 405(g) for review of the Commissioner of Social Security's decision denying Weddle's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act"). This case was referred to the undersigned Magistrate Judge on December 27, 2006, for report and recommendation. Following the filing of the administrative record and briefing, oral argument was held on August 28, 2007. As such, the case is now ripe for decision.

The undersigned finds that substantial evidence supports the Commissioner's decision that Weddle retains the residual functional capacity to do a significant range of work at the sedentary level and a limited range of work at the light exertional level. Accordingly, it is recommended that the ALJ's decision be affirmed.

I.

Weddle is a younger individual, born on September 10, 1963. (Administrative Record [hereinafter R.] at 53, 110, 199) Weddle graduated from high school and has past relevant work

experience as a glass finisher. (R. 105, 109, 113, 200, 204-07) Weddle filed an application for benefits on or about August 12, 2005, alleging that he became disabled on November 26, 2004[1], due to right ankle pain and a right side inguinal hernia. (R. 53, 75) Weddle's claims were denied at both the initial and reconsideration levels of administrative review, (R.18), and a hearing was held before an administrative law judge ("ALJ") on April 10, 2006. (R. 194-233) On April 26, 2006, the ALJ issued a decision denying Weddle's claims for benefits, finding that he retained the residual functional capacity ("RFC") to perform a significant range of sedentary work and a limited range of light exertional work. (R. 22, 24-25) Specifically, the ALJ found that Weddle could lift up to twenty-five pounds occasionally and ten pounds frequently, that he could stand and/or walk for up to two hours in an eight hour day, he could sit up to six hours in an eight hour day, but that he had limited ability to push/pull with his lower extremities, could only occasionally climb, balance, kneel, crouch, crawl, and stoop, and should avoid humidity and wetness. (R. 22)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on September 21, 2006, when the Appeals Council denied Weddle's request for review. (R. 8-11) Weddle then filed this action challenging the Commissioner's decision.

## II.

Weddle argues that the ALJ erred in finding that his complaints of disabling pain were not wholly credible, in finding that he retained the residual functional capacity to do a significant

---

[1] Initially, Weddle alleged an onset date of June 1, 2003. However, the alleged onset date was amended to November 2004 because the evidence adduced at the administrative hearing established that Weddle drew unemployment benefits until early 2004, sometime thereafter he began working at a glass company, and his employment ended in November 2004. (R. 197, 204)

2

range of sedentary and a limited range of light work, and in failing to pose appropriate questions to the vocational expert ("VE"). Accordingly, he requests that the decision of the Commissioner be reversed or, in the alternative, remanded for reconsideration in light of evidence which was made a part of the record by the Appeals Council, but which was not considered by the ALJ. (Pl. Summ. J. at 3-9)

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

### III.

Weddle argues that ALJ erred in finding that his claims of disabling pain were not wholly credible and in finding that he could do a significant range of sedentary[2] and a limited range of

---

[2]Sedentary work requires exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. Occasionally means activity or condition exists up to 1/3 of the time and frequently means activity or condition exists from 1/3 to 2/3 of the time. http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

light work.[3] Weddle testified that because of his pain, he spends most of his day sitting and reading, watching television, and/or laying in bed or on the couch. (R. 8-9) Weddle also complained that because of his hernia his upper leg and the inside of his groin are numb, he cannot bend, stoop, or lift, and he needs pain medication to control his discomfort. (R. 207-08) Weddle then testified that he also suffers from degenerative joint disease in his right ankle which further limits his ability to walk or lift, causes a "heart pumping throbbing pain," and occasional swelling. (R. 210-11) Weddle continued that his combined impairments make it very difficult for him to complete the usual activities of daily living activities, namely he cannot walk to the mailbox and back, about 40 feet from his home, without suffering from severe ankle pain; he can only drive limited distances; and he does minimal household chores, consisting primarily of washing a few dishes. (R. 213, 217) Weddle's mother testified that Weddle's ankle swelled every two to three months and that Weddle appeared to be in severe pain, as evinced by his difficulty moving around. (R. 224)

In light of conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Weddle's subjective allegation that he is disabled by pain, but rather must determine,

---

[3]Light work requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

4

through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Weddle's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).)

The ALJ found that Weddle's complaints of disabling pain were not wholly credible and were out of proportion to the objective medical evidence in the record. (R. 21,24) Further, the ALJ noted that although Weddle's conditions were likely to produce some degree of pain and discomfort, the objective medical evidence does not support a conclusion that he suffers pain of the intensity, frequency, and or duration which would preclude the performance of all substantial gainful activity. (R. 21)

Weddle's medical record is notably sparse and does not indicate pain of the intensity or severity to which he testified. The record establishes that in 1991, Weddle underwent surgery to repair a right inguinal hernia, the surgery was completed without complication, and no follow-up care was needed. (R. 131-32) Likewise, in 1997, Weddle underwent a second surgery to repair a right incarcerated inguinal hernia, the surgery was completed without complication, and no follow-up care was needed. (R. 133-35) There are no further medical records until 2004, and the only record from 2004 was related to treatment for sinus congestion. (R. 136-38)

5

Weddle saw a physician three times in 2005 for complaints of right ankle pain. During all three exams, although the examining physician noted that Weddle suffered from a hernia, none noted any pain or symptoms related to that condition. (R. 141, 143, 158) Weddle was treated at the Northern Hospital of Surry County Emergency Room on July 24, 2005. During the exam, the physician noted that Weddle was in moderate pain, his ankle was not swollen, and a neurological and motor response exam was normal. (R. 140) An x-ray of his right ankle showed only "mild degenerative changes" and no evidence of fracture, dislocation, or soft tissue swelling. (R. 142, 160) Weddle was prescribed a non-narcotic pain reliever, was told to be non-weight bearing on his right ankle for three days, and to follow-up with an orthopedist if his discomfort continued. (R. 141, 143-45) Weddle did not seek any further care.

Weddle saw his family physician on November 18, 2005 for a blood pressure check. During the exam Weddle also complained of right ankle pain and right ankle swelling which manifested two or three times a year. On exam, his physician noted that Weddle's ankle was mildly puffy and tender, but he had a full range of motion. He advised Weddle to take Tylenol to control his discomfort. (R. 159) Weddle returned a month later, on December 16, 2005, with complaints of sudden pain in his left knee and continued discomfort in his right ankle. His physician diagnosed Weddle with arthritis and injected his left knee and right ankle, but did not prescribe a pain reliever. (R. 158)

Weddle returned to his family physician on January 30, 2006. On exam, his physician noted that Weddle continued to suffer from "gouty arthritis" in his left knee and right ankle, he had a painful full range of motion in both his left knee and right ankle, and again injected both sites, but still did not prescribe a pain reliever. (R. 157)

6

Weddle was examined by a state agency physician, Dr. Humphries, on February 14, 2006. (R. 162-64) On exam, Weddle exhibited a reduced range of motion in his hips due to hernial discomfort. Dr. Humphries also noted that Weddle had a slightly reduced range of motion in his knees and right ankle joint, but only mild tenderness and no edema. He noted no signs of neurological changes and only a mildly antalgic gait on the right side. (R. 163) Dr. Humphries concluded that Weddle suffered from mild degenerative joint disease in both knees, his ankle, his hands, and feet and a chronic hernia, but that he could sit six hours in an eight hour work day, stand and/or walk two hours in an eight hour work day, and could lift twenty-five pounds occasionally and ten pounds frequently. (R. 164) Additionally, Dr. Humphries noted that with appropriate orthotics and physical therapy, he believed Weddle would be able to stand and/or walk six hours in an eight hour work day. (R. 164)

Weddle returned to his family physician on March 28, 2006, for a blood pressure and cholesterol follow-up exam. His physician noted that Weddle complained his "gout" in his ankle and knee were acting up, and he was prescribed Colchine, used to prevent inflamation associated with gouty arthritis, but no other pain medication. (R. 193)

On April 6, 2006, Dr. Miller at Mt. Airy Emergency Physicians at the Northern Hospital of Surry County prescribed Weddle ten Percocet, a narcotic pain reliever, but there are no medical records related to this visit. (R. 130) Weddle's discharge summary suggests the pain medication was provided for pain associated with his hernia and that Weddle was directed to follow up with another physician at the hospital within four days, but there are no medical records indicating he did so. (R. 172-73)

Weddle returned to the Northern Hospital for care related to his hernia on May 22, 2006. On exam, Dr. Jackson noted that Weddle's scrotum was tender on the right side due to a reducible hernia, but that Weddle was not taking any prescription pain relievers. (R. 189) Weddle's hernia was repaired without complication on May 31, 2006. (R. 189)

Weddle had a follow-up exam with his physician on August 9, 2006, and during the exam Weddle complained of sharp pain in his right ankle. His physician noted his gout was stable and did not prescribe pain medication. (R. 192)

Simply put, the medical records do not suggest that Weddle is suffering from disabling pain. Weddle has sought minimal treatment for his ailments. As to his ankle condition, x-rays of his ankle showed only "mild degenerative changes," and despite noting Weddle suffers from "gouty arthritis," his family physician has repeatedly noted minimal tenderness and swelling and has not prescribed narcotic pain relievers. Moreover, none of his physicians have noted Weddle has any problems ambulating or standing and/or that he needs the opportunity to lie down and/or elevate his legs during the day. Likewise, despite several references in the record to the hernia, there is no indication that Weddle's hernia caused him significant discomfort. The record establishes that Weddle has only been prescribed pain relievers twice, and both times the medication was minimal - once in July 2005 for pain associated with his ankle and once in 2006 for pain associated with his hernia. None of the treatment records suggest that Weddle's functional activities have been impeded by his alleged ankle discomfort or hernia related pain, nor is there any indication, other than for a three day period in July 2005, that any treating physician has suggested Weddle limit his physical activities. Likewise, for his hernia related discomfort, his physicians have only indicated he avoid vigorous activity and heavy lifting. None

8

of Weddle's physicians have indicated he is unable to work nor that he is unable to do any of the regular activities of daily living because of either condition. Weddle bears the burden of establishing that he suffers from a disability, and the lack of any evidence of such a debilitating condition leads the undersigned to conclude that there is substantial evidence to support the ALJ's determination that Weddle's ailments cause only a moderate functional limitation and, thus, do not prevent him from maintaining substantial gainful employment. 42 U.S.C. § 423(d), 1382; Heckler v. Campbell, 461 U.S. 458, 460 (1983).

Moreover, the undersigned finds the ALJ did not err in considering Weddle's activities of daily living in evaluating the credibility of his complaints and in finding that he retained the residual functional capacity to do some range of work. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (both stating that in evaluating the severity of a claimant's symptoms and pain the ALJ may consider evidence of the claimant's daily activities). Weddle's admitted functional abilities suggest that he is not as disabled as he now claims, and those reported activities are consistent with the ALJ's functional capacity assessment. In August 2005, Weddle reported that every morning, after showering, he cleans his home and spends the afternoon working on his car or his home. He also noted that in addition to going grocery shopping once a week, several times each month he goes to church, the mall, and/or restaurants. (R. 67-71) Similarly, in October 2005, Weddle reported that he takes care of his personal needs, does some house cleaning, including sweeping, mopping, and dusting, watches television, "drive[s] to and from work." Weddle also noted he takes care of his son on the weekends, he goes grocery and clothes shopping about once a week, and he occasionally goes to church and his son's baseball games. (R. 86-90) Accordingly, the court finds no reason to disturb the ALJ's credibility assessment.

9

See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that a claimant's daily activities can suggest he is not disabled); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

Based on a complete review of Weddle's medical history and his admitted functional abilities, the undersigned finds there is substantial evidence to support the ALJ's determination that Weddle retains the physical capacity for a significant range of sedentary work and a limited range of light work. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding of no disability where plaintiff testified that she suffers from severe pain and hand problems where plaintiff was able to attend Church twice a week, read books, watch television, clean the house, wash clothes, visit relatives, feed pets, manage household finances, and perform exercises recommended by her chiropractor); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where plaintiff was able to cook, shop, wash dishes, and walk to town every day).

## IV.

Weddle also argues that the questions the ALJ posed to the vocational expert ("VE") were unclear and, thus, cannot support a finding that there are jobs in significant number for a person with Weddle's functional limitations in the national economy. In the first question presented to the VE, the ALJ asked the VE if there were jobs available in significant number for a person with Dr. Humphries' assessed limitations who also suffered from mild concentration problems due to pain and depression. (R. 228) The VE responded in the affirmative and

10

identified the positions of cashier and assembler. Further, the VE stated both jobs would still be available to the same hypothetical person with the same physical functional limitations, but also having moderate concentration problems. (R. 229-30)

Contrary to Weddle's argument, the ALJ's hypothetical questions are neither confusing nor unsupported by the record. As noted above, Dr. Humphries found that Weddle could sit six hours in an eight hour work day, stand and/or walk two hours in an eight hour work day, and could lift twenty-five pounds occasionally and ten pounds frequently. (R. 164) This assessment is consistent with the ALJ's residual functional capacity assessment, (R. 22), and therefore, the ALJ's question was an appropriate and clear question encompassing all of the functional limitations supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

## V.

Finally, Weddle argues this case should be remanded for reevaluation of the assessed residual functional capacity in light of evidence that Weddle underwent a third hernia repair surgery in May 2006, more than a month after the ALJ issued his decision. As this evidence was incorporated into the record and considered by the Appeals Council, the court may only remand under Sentence Four if the evidence is material. Wilkins v. Sec'y, Dept. Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is material if there is a reasonable probability that had this evidence been before the ALJ, the ALJ would have found the claimant disabled. Id. A remand is warranted where the additional evidence is "conflicting" or presents "material competing testimony," Riley v. Apfel, 88 F.Supp.2d 572, 580 n. 14 (W.D. Va. 2000), or "calls into doubt any decision grounded in the prior medical reports." Ridings v. Apfel, 76 F.Supp.2d 707, 710 (W.D. Va. 1999).

11

The new evidence here establishes that Weddle's hernia, of which the ALJ was well-aware existed at the time his decision was issued, was repaired without complications in May 2006. Likewise, the new evidence related to his ankle establishes that his condition was stable and no pain medication was needed. Accordingly, the undersigned finds it unlikely that evidence establishing Weddle's hernia was fully repaired and his ankle remained stable and required no pain treatment would have reasonably impacted the ALJ's decision and, thus, concludes that the interim evidence is not material and does not provide a basis for remand.

## VII.

Based on the foregoing, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

In making this recommendation, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not

12

specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 31st day of August, 2007.

Michael F. Urbanski
United States Magistrate Judge